# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

ROBERT SATERDALEN,

        Plaintiff,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 11-3131 (MJD/TNL)

JAMES SPENCER and
DAVID RIKHUS,

        Defendants.

Duane A. Kennedy, Kennedy Law Office, and Jerome W. Perry, Perry Law Office, Counsel for Plaintiff.

Jenny Gassman-Pines and John M. Baker, Greene Espel PLLP, Counsel for Defendants.

## I.     INTRODUCTION

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings.  [Docket No. 19]  The Court heard oral argument on June 1, 2012. Because Defendant James Spencer is entitled to absolute prosecutorial immunity and Defendant David Rikhus is entitled to qualified immunity, the Court grants Defendants' Motion for Judgment on the Pleadings.

## II.    BACKGROUND

### A.    Factual Background

In February 2010, Plaintiff Robert Saterdalen was a registered Predatory

Offender, subject to the reporting requirements for Level 3 Predatory Offenders

under Minnesota Statute § 243.166, Minnesota's predatory offender registration

statute.  (Answer ¶ 33a; Reply ¶ 2.)  At that time, Saterdalen had an ownership

interest in the property located at 286 Guzman Crescent, Belize City, Belize ("the

Belize Address").  (Answer ¶ 33c; Reply ¶ 4.)  In his pleadings, Saterdalen claims

that he "would occasionally stay there when not staying at his primary address

in Minnesota."  (Reply ¶ 5.)  As of February 25, 2010, Saterdalen had not

registered the Belize Address with a corrections agent or authority; nor had he

previously reported it on his reporting forms.  (Answer ¶¶ 33f, 33g; Reply ¶¶ 7-

8.)

On February 25, 2010, Defendant David Rikhus, as the sworn

Complainant, drafted an Arrest Warrant Complaint related to the Belize

Address.  (Compl. ¶ 13; Ex. to Reply.)  The Arrest Warrant Complaint stated that

probable cause existed to believe that Saterdalen had violated Minnesota Statute

§ 243.166, subdivision 5(a), by knowingly violating his registration requirements

or intentionally providing false information while on conditional release, by

failing to register the Belize Address or failing to inform the authorities that

previously reported registration information was incorrect, as required under

Minnesota Statute § 243.166, subdivisions 4a(1)-(6).  (Arrest Warrant Compl. at

1.)  The Statement of Probable Cause alleged that, in December 2009, Saterdalen

told Rikhus, by telephone, that he was in Belize and would not return to

Minnesota until the end of March 2010.  (Id. at 2.)  It alleged that, in February

2010, Saterdalen had been taken into custody in Belize for possession of child

pornography and suspected sex assault on minors.  (Id. at 2.)  It further alleged

that, on February 25, 2010, Rikhus received an email with a written statement

Saterdalen had given to the Belize City police, in which he

> acknowledged that he bought a house in Belize City approximately
> 6 years ago and he spends his winters there.  At no time has
> Saterdalen disclosed that he owns any property there and that this is
> his residence while he is in South America.  By not providing this
> address in Belize, Saterdalen is in violation of his registration
> requirements in that the BCA cannot mail a verification form to
> Saterdalen.

(Compl. ¶ 10; Arrest Warrant Compl. at 3.)

On February 25, 2010, Rikhus signed the Arrest Warrant Complaint under

oath as the "Complainant," requesting that Defendant be arrested, and a notary

public notarized Rikhus's signature.  (Compl. ¶¶ 14-15; Arrest Warrant Compl.

at 4.)  On the same day, Defendant Senior Assistant County Attorney James P.

Spencer signed the Arrest Warrant Complaint in a box that was separate from

Rikhus's signature and notarization.  (Compl. ¶ 6; Arrest Warrant Compl. at 4.)

The box in which Spencer signed stated:

> Being authorized to prosecute the offenses charged, I approve this
> complaint.
>
> Date: 2/25/10                 PROSECUTING ATTORNEY'S SIGNATURE:
>
> [signed] James Spencer

(Arrest Warrant Compl. at 4.)

Olmsted County District Court Judge Joseph Chase approved the

Complaint, stating that, based upon the sworn facts, he had "determined that

probable cause exists to support . . . Defendant's arrest," and issued an arrest

warrant for Saterdalen on February 25, 2010.  (Compl. ¶ 19; Arrest Warrant

Compl. at 5.)  Saterdalen alleges that, as a result of this arrest warrant, he was

seized in Belize City, incarcerated, and transported to Texas and, eventually, to

the Olmsted County Jail.  (Compl. ¶¶ 21-25.)

On August 31, 2010, Chief Deputy Olmsted County Attorney James S.

Martinson dismissed the Complaint against Saterdalen because: "There is

insufficient evidence for the State to prove its case beyond a reasonable doubt. The defendant was not obligated by Minnesota law to register a secondary address located outside the State of Minnesota."  (Compl. ¶ 27; State's Dismissal of Compl., Ex. to Reply.)

### B.    Procedural Background

On October 24, 2011, Saterdalen filed a Complaint against Spencer and Rikhus in this Court alleging Count One: "42 U.S.C. Sec. 1983 Against the Individual Defendant."  [Docket No. 1]  The Complaint alleges "that the Defendants did a malicious prosecution, resulting in an unreasonable seizure and unlawful detention of the person of the Plaintiff, violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution." (Compl. ¶ 2.)  Defendants filed a Joint Answer and Jury Trial Demand.  [Docket No. 4]  Plaintiff then filed a Reply to Defendants' Answer.  [Docket No. 18]  The Arrest Warrant Complaint and the State's Dismissal of the Complaint against Saterdalen are attached to Plaintiff's Reply as exhibits.

Defendants now move to dismiss the Complaint based on absolute and qualified immunity.

### III.   DISCUSSION

## A.     Legal Standard for Judgment on the Pleadings

Judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." <u>Poehl v. Countrywide Home Loans, Inc.</u>, 528 F.3d 1093, 1096 (8th Cir. 2008) (citation omitted). The Court must view the facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. <u>Id.</u> "When considering a motion for judgment on the pleadings . . ., the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  In this case, both the Arrest Warrant Complaint and the State's Dismissal of Complaint are attached to Plaintiff's Reply to Defendants' Answer and, also, are necessarily embraced by the pleadings.

## B.     Absolute Prosecutorial Immunity: Defendant Spencer

Spencer is entitled to absolute prosecutorial immunity from the claim asserted against him based on his role in the issuance of the Arrest Warrant Complaint.

### 1.     Prosecutorial Immunity Standard

A state prosecutor enjoys absolute immunity from lawsuits based on acts

performed "in initiating a prosecution and in presenting the State's case."  Imbler

v. Pachtman, 424 U.S. 409, 431 (1976).

> Prosecutors are absolutely immune from suits for damages arising
> out of their official duties in initiating and pursuing criminal
> prosecutions.  Not all acts of a prosecutor are immunized, but the
> immunity does extend to cover all acts undertaken in the role of
> advocate in the judicial phase of criminal proceedings.  This includes
> actions connected with initiation of prosecution, even if those
> actions are patently improper.  The purpose of absolute immunity is
> to protect the function of the prosecutor as a key participant in the
> criminal process.

Williams v. Hartje, 827 F.2d 1203, 1208 (8th Cir. 1987) (citations omitted).

> The decision of a prosecutor to file criminal charges is within the set
> of core functions which is protected by absolute immunity.  This is
> so even if the prosecutor makes that decision in a consciously
> malicious manner, or vindictively, or without adequate
> investigation, or in excess of his jurisdiction.

Id. at 1209 (citations omitted).  Absolute prosecutorial immunity "defeats a suit

at the outset, so long as the official's actions were within the scope of the

immunity."  Imbler, 424 U.S. at 419 n.13.

> Absolute prosecutorial immunity protects a prosecutor's
>
> drafting of the certification [for an arrest warrant], her determination
> that the evidence was sufficiently strong to justify a probable-cause
> finding, her decision to file charges, and her presentation of the

> information and the motion to the court.  Each of those matters
> involved the exercise of professional judgment; indeed, even the
> selection of the particular facts to include in the certification to
> provide the evidentiary support for the finding of probable cause
> required the exercise of the judgment of the advocate.

Kalina v. Fletcher, 522 U.S. 118, 130 (1997).  However, a prosecutor's personal

attestation to the truth of the averments in the certification of probable cause is

not protected because, in that case, "the only function that she performs in giving

sworn testimony is that of a witness."  Id. at 131.

In his Complaint, Plaintiff alleges the following acts by Spencer: 1) "On

February 25, 2010, the Defendant Spencer reviewed, approved and executed a

Complaint Arrest Warrant against the Defendant;" and 2) "On February 25, 2010,

when Defendant Spencer approved and executed the Complaint, he was

vouching, of his own accord, for the truth of the statement of probable cause that

he knew would be presented to a judicial officer for approval, and issuance of the

warrant."  (Compl.¶¶ 6, 9.)

### 2.      Spencer's Act of Reviewing, Approving, and Executing the Arrest Warrant Complaint

Reviewing, approving, and executing the Arrest Warrant Complaint were

prosecutorial functions that were essential parts of the commencement of

criminal charges, subject to absolute prosecutorial immunity.  See Kalina, 522

U.S. at 129-30.  See also Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006)

("The acts of preparing, signing, and filing a criminal complaint constitute

prosecutorial functions, as they are advocacy on behalf of the government.")

(citing Kalina, 522 U.S. at 129).

The Arrest Warrant Complaint initiated the criminal prosecution against

Saterdalen, and the Minnesota Rules require that a complaint contain a

prosecutor's signature.  Minn. R. Crim. P. 2.02.  When Spencer reviewed,

approved, and executed the Arrest Warrant Complaint, he was both initiating a

lawsuit and fulfilling duties required of prosecutors under Minnesota law.  His

actions were the undertaking of prosecutorial duties essential to the initiation of

the prosecution; therefore, he is entitled to absolute immunity for those actions.

### 3.    Spencer's Act of Signing the Arrest Warrant Complaint

Saterdalen further argues that Spencer acted as a complaining witness

rather than as a prosecutor, as in Kalina, by vouching for the truth of the facts in

the probable cause statement.  The Court rejects this characterization of Spencer's

act of signing the Arrest Warrant Complaint.

The Arrest Warrant Complaint identifies "Detective Rikhus" as the

"Complainant."  (Arrest Warrant Complaint at 1, 4.)  Only Rikhus swore to the

factual allegations in the complaint – his signature is notarized and the Arrest

Warrant Complaint states: "[T]he Complainant, being duly sworn, makes

complaint to the above-named Court and states that there is probable cause to

believe that the Defendant committed" the offenses listed in the Complaint.

(Arrest Warrant Complaint at 1, 4.)

   In contrast, by signing the Arrest Warrant Complaint, Spencer was not

attesting to the facts contained in it.  Spencer was not identified as the

"Complainant," his signature is not notarized, and there is no indication that

Spencer swore to any fact in the Arrest Warrant Complaint.  The box containing

his signature merely states: "Being authorized to prosecute the offense charged, I

approve this Complaint."  The Minnesota Rules of Criminal Procedure provide

that a complaint cannot issue unless a Complainant attests to the probable cause

statement; however, the Rules only require a prosecutor to sign, not swear under

oath.  <u>Compare</u> Minn. R. Crim. P. 2.01, subd. 2 ("The probable cause statement

must be made under oath . . . .") <u>with</u> Minn. R. Crim. P. 2.02 ("A complaint must

not be issued without the prosecutor's signature . . . .").  The Rules make clear

that the witness's signature attests to the veracity of the facts, while the

prosecutor's signature simply approves the complaint.  Cf. <u>Kalina</u>, 522 U.S. at 129

(addressing situation in which the prosecutor acts as a complaining witness, rather than as a prosecutor, when she swears to the truth of the alleged facts supporting the charge "[u]nder penalty of perjury"). <u>See also</u> <u>Rivera v. Leal</u>, 359 F.3d 1350, 1355 (11th Cir. 2004) ("The sworn/unsworn distinction is more than critical; it is determinative.").

A prosecutor's determination that the evidence is sufficiently strong to justify a probable cause finding involves the exercise of the prosecutor's professional judgment and is protected by absolute immunity. <u>Kalina</u>, 522 U.S. at 130. It is only when a prosecutor's "sworn testimony" concerns the "evidentiary component" of the application for an arrest warrant that his acts fall outside the scope of absolute immunity. <u>Id.</u> at 131.

Absolute prosecutorial immunity applies to Spencer because "[t]he acts of preparing, **<u>signing</u>**, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." <u>Schenk</u>, 461 F.3d at 1046 (citing <u>Kalina</u>, 522 U.S. at 129) (emphasis added). Minnesota law requires the signature of a prosecutor before a complaint will issue, Minn. R. Crim. P. 2.02, demonstrating that, under Minnesota law, Spencer was acting in the role of a prosecutor when he signed. Moreover, his signature was not under oath and

did not attest to the truth of the facts in the probable cause statement.  Spencer

was acting as an advocate in a prosecutorial function – one required to be

performed by prosecutors under Minnesota law.  Therefore, he is entitled to

absolute prosecutorial immunity.

### C.    Qualified Immunity: Defendant Rikhus

Rikhus is entitled to qualified immunity from the claim asserted against

him based on his role in the issuance of the Arrest Warrant Complaint.

### 1.    Qualified Immunity Standard

Under the qualified immunity doctrine, government officials
performing discretionary functions generally are shielded from
liability for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known.  Officials are not liable for
incorrect decisions made in gray areas of the law.

Burke v. Sullivan, 677 F.3d 367, 2012 WL 1558135, at *2 (8th Cir. 2012) (citations

omitted).

To defeat a defense of qualified immunity, a plaintiff must show: (1)
the facts, viewed in the light most favorable to the plaintiff,
demonstrate the deprivation of a constitutional or statutory right;
and (2) the right was clearly established at the time of the
deprivation.

Id. (citations omitted).  The Court may address either step of the qualified

immunity inquiry first.  Id.

"For the purposes of step two, 'clearly established' means [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012) (citation omitted).  Although the clearly established test does "not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (citations omitted).

### 2.  Seizure in Violation of the Fourth Amendment Right

> The Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established.  Nevertheless, law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so-provided that the mistake is objectively reasonable.  Stated otherwise, [t]he issue for immunity purposes is not probable cause in fact but arguable probable cause.

Kuehl v. Burtis, 173 F.3d 646, 649-50 (8th Cir. 1999) (citations omitted).

"Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." Id. at 650 (citation omitted).  "[P]robable cause does not exist when a minimal further investigation would have exonerated the suspect." Id. (citations omitted).

13

Fourth Amendment reasonableness is predominantly an objective
inquiry.  We ask whether the circumstances, viewed objectively,
justify [the challenged] action.  If so, that action was reasonable
whatever the subjective intent motivating the relevant officials.  This
approach recognizes that the Fourth Amendment regulates conduct
rather than thoughts, and it promotes evenhanded, uniform
enforcement of the law.

al-Kidd, 131 S. Ct. at 2080 (citations omitted).

### 3.    Existence of Arguable Probable Cause

Saterdalen's sole allegation of falsity in the Arrest Warrant Complaint is

that the statement that "'Saterdalen is in violation of his registration

requirements' was false, material, and misleading to the judicial officer who

would determine probable cause."  (Compl. ¶11.)  Saterdalen makes no

allegation that any factual assertion in the Arrest Warrant Complaint, as opposed

to the foregoing legal assertion, was false.  The Court holds that, even if Rikhus'

actions violated Saterdalen's constitutional rights by seeking arrest of Saterdalen

when, in fact, his actions did not violate the Minnesota's predatory offender

registration statute, Rikhus did not violate a clearly established right.

### a)    The Registration Statute

Minnesota Statute § 243.166, subdivision 4a(a) provides a list of the

information that person required to register under the statute, such as

14

Saterdalen, must report, including "(1) the person's primary address; [and] (2) all of the person's secondary addresses in Minnesota, including all addresses used for residential or recreational purposes."

Saterdalen argues that Defendants mistakenly sought his arrest for a violation of subdivision 4a(2), the secondary address reporting requirement. Defendants argue that they had probable cause to believe that Saterdalen failed to report that the Belize Address was his new primary address, under subdivision 4a(1).

### b)    Secondary Address

"'Secondary address' means the mailing address of any place where the person regularly or occasionally stays overnight when not staying at the person's primary address."  Minn. Stat. § 243.166, subd. 1a(i).  It is clear that Minnesota Statute § 243.166, subdivision 4a(a)(2), requiring registration of "all of the person's secondary addresses in Minnesota, including all addresses used for residential or recreational purposes," did not require Saterdalen to provide anyone with the address of his winter vacation home <u>outside of Minnesota</u>. Unquestionably, the Belize Address did not qualify as a reportable secondary address.

### c)      Primary Address

Defendants had arguable probable cause to believe that the Belize Address was Saterdalen's primary address, not his secondary address.

### (1)      Allegations in the Arrest Warrant Complaint

The Arrest Warrant Complaint does not limit the grounds for Saterdalen's arrest and prosecution to his failure to report a secondary address.  It also encompasses a failure to report a change in his primary address.  The Arrest Warrant Complaint alleges, Count 1, "Predatory Offender – Knowingly Violates Registration Req. or Intentionally Provides False Information In Violation Of: 243.166 subd. 5(a)."  (Arrest Warrant Compl. at 1.)  Count 1 is not limited to the secondary address requirement, subdivision 4a(a)(2).  Under the various bases for violation of subdivision 5(a), which generally applies criminal liability to a person who is required to register but violates any of the subdivisions of § 243.166, Count 1 specifically lists "or fail to inform authorities immediately that any information previously reported as required by Minnesota Statute § 243.166, subd. 4a(1) to (6) is no longer valid."  (Id.)  Subdivision 4a(a)(1) refers to the "primary address" registration requirement.

16

Elsewhere, the Arrest Warrant Complaint generally asserts that, "[b]y not providing this address in Belize, Saterdalen is in violation of his registration requirements in that the BCA cannot mail a verification form to Saterdalen." (Arrest Warrant Compl. at 3)  The phrase "primary address" also appears in the document.  (Id. at 2 ("As a result of these convictions, Saterdalen is required to register his address either primary or secondary until 7/2/2012.").)

### (2)   Statutory Definition of Primary Address

The Minnesota statute defines "primary address" as "the mailing address of the person's dwelling."  Minn. Stat. § 243.166, subd. 1a(g).  A "dwelling" is "the building where the person lives under a formal or informal agreement to do so."  Id., subd. 1a(c).  The statute requires offenders to report their "primary address" and, also, to immediately notify the relevant agent or authority if a change in circumstances causes any information they previously reported, including their primary address, to no longer be valid.  Id., subd. 4a(a), (b).  The Minnesota statute does not include a "within Minnesota" limitation for "primary address" as it does for secondary address.  See Minn. Stat. § 243.166, subds. 1a(g), 4a(a)(1)-(2).

The statutory definition of "primary address" does not unambiguously provide that a vacation home, owned by a person who must register, at which the person intends to, and does, stay for months at a time, does not qualify as a primary address.  Ambiguity in the statutory text weighs in favor of finding arguable probable cause.  See, e.g., Khan v. Ryan, 145 F. Supp. 2d 280, 286 (E.D.N.Y. 2001).

### (3)     Lack of Judicial Interpretation of "Primary Address"

The Minnesota Supreme Court has not interpreted the definition of primary address in the relevant portion of Minnesota's predatory offender registration statute.  As of February 2010, when Rikhus swore out the Arrest Warrant Complaint, the Minnesota Court of Appeals has issued a handful of unpublished, non-precedential, cases including the "primary address" term, but none provided guidance as to whether a vacation home, owned by the person who must report, at which the person intentionally lives for months at a time, would qualify as a primary address.  See, e.g. State v. Delapaz, No. A06-1014, 2007 WL 1976668, at *3 (Minn. Ct. App. July 10, 2007) (holding that the term "new primary address" was interchangeable with the term "new primary living address" and that "there is no material distinction between describing one's

18

residence and one's 'primary address'"); <u>State v. Qualley</u>, No. A04-837, 2005 WL 1019290, at *1-*2, *5 (Minn. Ct. App. May 3, 2005) (held that an apartment qualified as a "primary address" when a defendant, with his girlfriend, moved into the apartment, without a lease, with the intention to stay there for two months, stayed there for one month, used the address on job applications, and occasionally received mail at the address, although most mail was received at a post office box); <u>State v. Wittebort</u>, No. A09-1330, 2009 WL 4911111, at *2 (Minn. Ct. App. Dec. 22, 2009) (holding that, when defendant had stayed at his girlfriend's apartment and had not stayed at his sister's address for a few weeks and had reported the girlfriend's address to authorities as his secondary address and the sister's address as his primary address, the girlfriend's apartment was a secondary, not a primary, address).

### (4)    Lack of Clearly Established Law

The law that Saterdalen's Belize Address could not constitute a primary address was not clearly established at the time of his arrest.  <u>See</u> <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2083 (2011) (holding that law regarding constitutionality of pretextual use of a material-witness warrant was not clearly established when, at the time of plaintiff's arrest, "not a single judicial opinion had held that pretext

could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional"). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Id. at 2085.

The most reasonable interpretation of the statute is that the Belize Address was not a primary address because Saterdalen still had a Minnesota address to which he planned to return each year. However, based on all of the case law in existence in February 2010 and the ambiguous statutory language, the Court cannot conclude that this interpretation was clearly established law. At the time Rikhus swore out the Arrest Warrant Complaint against Saterdalen, he knew that Saterdalen was staying at the Belize Address in which he had an ownership interest, and intended to stay there for months. The Belize Address could be considered a "dwelling" – "the building where the person lives under a formal or informal agreement to do so," because it was a home that Saterdalen owned and stayed in for months at a time. The statute itself does not provide any further definition that would prohibit a seasonal home from being a primary address for that seasonal time period. Nor do any published cases exist establishing a definitive interpretation of the relevant portion of the statute. In

other words, a reasonable officer could have interpreted the statute to mean that the Minnesota address in Oronoco was Saterdalen's primary address until December 2009, when the Belize Address became his primary address and, if Saterdalen had returned to Minnesota at the end of March 2010, as he claimed that he planned to do, then the Oronoco address would have, again, become his primary address. It was not implausible for Rikhus to conclude that the Belize Address was his dwelling and, thus, under the statute, a primary address.  See Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1108 (8th Cir. 2004) ("Police officers are not expected to parse code language as though they were participating in a law school seminar . . . .  Given the lack of detailed judicial guidance on the interplay among the statutory terms . . . , we conclude that the arrest [] did not violate clearly established law.").

The Court holds that Rikhus is entitled to qualified immunity because it was not clearly established, in February 2010, that the predatory offender registration statute's primary address registration requirement did not apply to a home owned by an offender in a foreign country in which the offender lives for a few months at a time.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

Defendants' Motion for Judgment on the Pleadings [Docket No. 19] is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   July 13, 2012                    s/ Michael J. Davis
                                                    Michael J. Davis
                                                    Chief Judge
                                                    United States District Court